TERRI F. LOVE, Judge.
| ¾ This appeal arises from the alleged battery of a juvenile in custody at the New Orleans Youth Study Center juvenile correctional facility. Two male correctional officers were charged with malfeasance in office in conjunction with the battery. Both defendants filed motions to quash the bill of particulars alleging that the bills lacked sufficient information to substantiate the charges. The trial court granted one defendant’s motion, and denied the other. The trial court also granted one defendant’s motion to sever.
The State sought an appeal from the trial court judgment granting one of the defendants’ motions to quash the bill of particulars. We find that the trial court erred in granting the defendant’s motion to quash because the bill of particulars advised the defendant of the actions leading to the charges and the duties allegedly violated. The other defendant sought supervisory review from the trial court denying his motion to quash the bill of particulars. However, we find that the trial court did not err by denying the motion, and deny the writ. Lastly, the State sought supervisory review of the trial court’s judgment granting the defendant’s motion to sever. We grant the State’s writ because there was no evidence of antagonistic defenses, reverse the trial court, and remand for further proceedings consistent with 12this opinion.

FACTUAL BACKGROUND

Charles Ferguson and Alonzo Horton[1] (collectively “Defendants”) were charged with malfeasance in office in connection with the alleged beating of C.P.,[2] a male juvenile inmate at the New Orleans Youth Study Center (“YSC”) juvenile correctional facility. Mr. Ferguson and Mr. Horton were both correctional officers at the YSC.
At the probable cause hearing, the State presented the testimony of New Orleans Police Officer Teron Ray, who investigated the case. Officer Ray’s testimony was based on (1) her interview of YSC Superintendent Glen Holt about the incident; (2) her interview of C.P.; (3) her review of a handwritten YSC staff investigation report prepared by Correctional Officer Kenisha Waker, who was present when the incident occurred; and (4) her conversation with Mr. Horton prior to placing him under arrest.
Officer Ray testified extensively to the content of CO Waker’s report. CO Waker wrote that on August 5, 2012, at approximately 7:15 a.m., Mr. Horton “came down” *452 to Unit 4 and knocked on the door. CO Waker opened the door for Mr. Horton, and he entered. Mr. Horton asked CO Waker what room was C.P.’s. She told him, and opened the door to the room, not knowing Mr. Horton’s intentions. C.P. was sleeping. C.P.’s room was in a heightened, security area of the |3YSC, and it had an observation window. As CO Waker was standing at her desk recording an entry in a log book, she heard “a beating noise” and C.P. yelling: “Ah! Man what you doing?!” CO Waker said Mr. Horton was responding: “So you [sic] disrespecting women huh?!” . CO Waker wrote that she walked over to the window of C.P.’s room and observed .Mr. Horton hitting C.P. with what appeared to be a white sock containing an unknown object. CO Waker stated that the unit phone rang, whereupon she walked over to the counter to answer it. It was a supervisor requesting CO Waker’s assistance dealing with an irate female juvenile inmate in the facility’s female unit. CO Waker said she heard a lot of rumbling and noise in C.P.’s room, which sounded like a fight.
Further, CO Waker wrote that she hung up the phone and asked Mr. Ferguson to let her out of the unit to assist the supervisor. She said: “Before CO Ferguson could let [her] off the unit, CO Horton exited C.P.’s room. Youth C.P. attempted to run after CO Horton and CO Ferguson stopped and pushed youth C.P. back inside his room. Youth C.P. then reached over CO. Ferguson’s shoulder and hit CO Horton in the face and said, ‘nah b-!’” Mr. Horton then entered C.P.’s room and began to “physically assault youth C.P. again.” CO Waker said C.P. was crying and yelling. “CO Ferguson walked away from the youth C.P.’s door and proceeded to. open the unit door for [her] to exit.”
Officer Ray testified at the probable cause hearing that Superintendent Holt informed her that a few of his correctional officers observed Mr. Horton beating an inmate. When testifying as to what CO Waker wrote in her report, Officer Ray was asked by the prosecutor: “And after the physical altercation occurred, Mr. Ferguson allowed both of the people to be in the room alone and then walked away?” Officer Ráy replied: ‘Yes, according to the ’statements.” ''
^Officer Ray further testified that during her on-scene investigation at the YSC, she telephoned Mr. Horton, advised him of her investigation, and requested that he come to the YSC. When Mr. Horton arrived,. Officer Ray advised him of the pending charge and informed him of his rights. She testified that Mr. Horton stated that he was very good with kids .and denied the allegations. She said Mr. Horton noted that he .was very strict with the inmates, and he said that sometimes they can get a little rowdy. He denied beating C.P. She believed that when she asked him about “the socks,” Mr. Horton told her “something like” he was bringing in some socks, and there was nothing in the socks. He again denied the allegations.
Officer Ray interviewed C.P. ten days after the incident, the same day she interviewed Superintendent Holt and arrested Mr. Horton. She did not notice any bruising on C.P. Officer Ray said she was advised that C.P. had been taken to thé nurses’ station ‘with a swollen upper lip and injuries to his’ inner right foot, a thumb, and an index finger. Officer Ray did hot investigate whether C.P. had any injuries preexisting the alleged beating by Mr. Horton..

PROCEDURAL HISTORY

Mr. Horton and Mr. Ferguson were jointly charged in a bill of information with malfeasance in office, a violation of La. *453 R,S. 14:134.[3] Both Mr. Horton and | BMr, Ferguson filed Motions to Quash the Bill of Particulars. Mr. Horton also filed a Motion to Sever .alleging that he and Mr. Ferguson had antagonistic defenses. The trial court granted Mr. Horton’s Motion to Sever; denied Mr. Horton’s Motion to Quash; and granted Mr. Ferguson’s Motion to Quash. The State filed a timely appeal of the trial court’s! grant of Mr. Ferguson’s Motion to Quash the Bill of Particulars, 2015-KA-1305. The State also filed an application for supervisory review of the grant of Mr. Horton’s Motion to Sever, 2014-K-1334. Mr. Horton filed an application for supervisory review of the denial of his Motion to Quash the Bill of Particulars, 2014-K-1321. This Court consolidated all three cases by order.

STATE APPEAL: 2014-KA-1305

The State asserts that the trial' court erred in granting Mr. Ferguson’s Motion to Quash because Mr. Ferguson was. lawfully notified which acts constituted malfeasance in office. Mr. Ferguson filed three motions to quash. The first and third motions were based on La, C.Cr.P. art. 532(1). The second motion was based on La. C.Cr. P. art. 532(2).[4] In the third motion to quash, Mr. Ferguson acknowledged that the State filed a modified/amended bill of particulars, but contended that- the State failed to inform him of the acts he committed that supported the malfeasance charge. Mr. Ferguson’s third and last motion to quash is the sub-, ject of the present appeal.
|fiLa. C.Cr.P. art. 532(1) provides that “A motion to quash may be based on” the fact that “[t]he indictment fails to charge an offense which is punishable under a valid statute.” “A motion to quash is essentially a mechanism whereby pre-trial pleas, which do not go to the merits of the charge are urged.” State v. Eberhardt, 13-2306, 14-0209, p. 4, fn. 2 (La.7/1/14), 145 So.3d 377, 381, fn. 2. The motion to quash grounds urged by Mr. Ferguson in his second and third motions, which supersede his first — that the indictment fails to charge an offense which is punishable under a valid statute, La. C.Cr.P. art. 532(1) — “can be analogized to an exception of no cause of action in the civil arena.” State v. Petitto, 10-0581, p. 4 (La.3/15/11), 59 So.3d 1245, 1248. “In considering the motion to quash, the district court accepts as true the facts contained in the indict *454 ment or bill of information and in the bill of particulars, and determines as a matter of law and from the face of the pleadings, whether a crime has been charged.” Id. A trial court’s ruling granting or denying a motion to quash is reviewable for error of law, thus requiring a de novo standard of review. State v. Ancalade, 14-0379, p. 10 (La.App. 4 Cir. 1/14/15), 158 So.3d 891, 897. In deciding a motion to quash a bill of information, a “trial court is not authorized to make any factual determinations”; factual defenses going to the merits of the charge are not proper grounds to be considered when deciding a motion to quash. State v. Landry, 13-1030, p. 5 (La.App. 4 Cir. 5/7/14), 144 So.3d 1078, 1082.
La. Const. Art. I, § 13 requires the State to inform the accused in a criminal prosecution of the nature and cause of the accusation against him. The State may provide the information in the indictment alone or in its responses to a defendant’s request for a bill of particulars. State v. DeJesus, 94-0261, p. 4 (La.9/16/94), 642 So.2d 854, 855. “The purpose of the bill of particulars is to inform the accused 17more fully of the nature and scope of the charge against him so that he will be able to defend himself properly and to avoid any possibility of ever being charged again with the same criminal conduct.” DeJesus, 94-0261, p. 3, 642 So.2d at 855.
Mr. Ferguson was charged with malfeasance in office, defined in pertinent part by La. R.S. 14:134 as:
A. Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner; or
The indictment in the present case charged that Mr. Ferguson “committed malfeasance in office” on August 5,2012, in Orleans Parish. The indictment set forth no additional facts.
The State filed two bills of particulars. In the first, in response to a motion for a bill of particulars and discovery by Mr. Horton, the State pertinently set forth in Paragraph 2 that:
2. Defendant Ferguson committed the crime of malfeasance in office by failing to report, the battery and actions observed [sic] by co-defendant Horton and by covering up and lying about the incident.
[handwritten amendment dated April, 22, 2014: “including La. R.S. 14:130.1 obstruction of justice and accessory after the fact to simple battery. 14:(25)35.”]
(a) In addition to other evidence, the State intends to use sections of the Youth Studies Center Training Manual that Defendant Ferguson violated as evidence of his intent to commit malfeasance in office. These sections include 3.2, 3.4, 3.5, 3.6, 3.7, 3.8, 9.1, 9.2, 9.6, 11.1,11.2,11.4,12.1, and 12.2.
At the hearing wherein the State made the handwritten amendment to its bill of particulars quoted above, defense counsel noted the broadness/vagueness of the YSC training manual sections in regards to notifying the Defendants which acts | «constituted malfeasance in office. The trial court inspected a copy of a ‘Youth Study Center, 2012 Handbook” provided by the State and informed the State that in order to use the handbook, the specific provisions that the Defendants’ allegedly violated must be noted.
In the subsequent bill of particulars, the State did not reference the YSC Handbook (“Training Manual”), but provided that:
*455 1. Pursuant to La. R.S. 14:134, the State alleges that Defendants Horton and Ferguson, as a[sic] public employees, had an affirmative duty to lawfully detain juvenile offenders and intentionally performed such duty in an unlawful manner.
2. The Louisiana Children’s Code Art. 306(A) [5] requires that juvenile offenders be held in custody in a juvenile detention center. Louisiana Children’s Code Article 306(A) imposes an affirmative duty by law to detain juvenile offenders. Both defendants committed malfeasance in office while performing this affirmative duty in an unlawful manner by committing a Battery upon Victim C.P., Obstruction of Justice and Accessory after the Fact. Defendant Ferguson additionally committed the crime of Injuring Public Records.
3. Both defendants were public employees who had an affirmative duty to lawfully detain juvenile offenders. Both defendants violated this lawfully required duty by performing it in an unlawful manner. State v. Coker, 625 So.2d 190 (La.Ct.App.1993).
The State does not include La. Ch.C. art. 306(A) as the source of any duty or duties imposed on Mr. Ferguson as a correctional officer at the YSC, thereby abandoning its previous position that this statute provided a basis for charging Mr. Ferguson with committing malfeasance in office.
The State cites to provisions of Title 67, Part V, Subpart 8, Chapter 75 of the Louisiana Administrative Code, governing “Juvenile Detention Facilities.” |flHowever, none of these administrative provisions were cited in either of the two bills of particulars or the indictment. Mr. Ferguson asserts that this Court should not consider these additional sources of his duty as a juvenile correctional officer because the State did not cite them in the indictment or bill of particulars.
In Petitto, the Louisiana Supreme Court noted that the indictment for malfeasance in that case “explicitly sets forth the affirmative duties it alleges are ‘lawfully required’ of the defendant.” 10-0581, p. 5, 59 So.3d at 1249. The indictment alleged that the defendant committed malfeasance in office in Count 1 “by wilfully [sic] and intentionally performing duties in an unlawful manner by violating LA R.S. 42:1112B(1),” and in Count 2 by “wilfully [sic] and intentionally performing duties in an unlawful manner by violating LA R.S. 42:1111E(1).” Id. The two statutes were part of the Code of Governmental Ethics. Id.
The broad issue in Petitto was whether the duty element of the crime of malfeasance in office was derived from a criminal statute, thus excluding any duties imposed by provisions of the Code of Governmental Ethics. Id. The Louisiana Supreme Court in Petitto stated:
The crime of malfeasance in office, which has been a part of Louisiana’s penal laws for close to a century, is intended to protect the public by deterring public officers and employees from abusing their positions of public trust. State v. McGuffie, 42,069, p. 11-12 (La. App. 2 Cir. 8/1/07), 962 So.2d 1111, 1118, writ denied, 07-2033 (La.2/22/08), 976 So.2d 1283. The language of the malfeasance statute is comprehensive. The law applies to “any public officer or public employee” who intentionally refuses or fails to perform or who intentionally *456 performs in an unlawful manner “any duty lawfully required of him.” In enacting this provision, the legislature deliberately chose not to specify or name a particular duty or duties, the abuse of which could lead to prosecution for malfeasance. This decision 110not to further define the duty element is understandable given the multitude of different public employees and officials covered by the statute. Indeed, it would be difficult, if not impossible, to construct a definition of duty that would encompass all the derelictions of duty the statute seeks to proscribe. . Instead, the legislature chose to restrict the duty element of the crime to “any duty lawfully required” of the. public officer or employee.
This is not the first case in which courts have been tasked with interpreting the meaning and scope of the phrase “any duty lawfully required.” In rejecting a vagueness challenge to LSA-R.S. 14:134, the court in State v. Perret, 563 So.2d 459 (La.App. 1 Cir.1990), noted that the language has a well-defined and readily understandable meaning:
Webster’s Third New International Dictionary (1968) defines “lawful,” “lawfully,” and “unlawful” as follows: (1) “Lawful” means “constituted, authorized, or established by law: rightful.” (2) “Lawfully” means “in a. lawful manner.” (3) “Unlawful” means “not lawful: contrary to or prohibited by law: hot authorized or justified by law: not permitted or warranted by law.”
Perret, 563 So.2d at 467. In State v. Passman, [391 So.2d 1140 (La.1980) ], this court interpreted the phrase “any duty lawfully required” to mean that before a public officer or employee can be charged with malfeasance in office, there must be a statute or provision of law which imposes an affirmative duty ■ upon him. Passman, 391 So.2d at 1144. As Justice Lemmon later explained, the court in Passman examined the statutory language- and, consistent with that language, narrowly defined malfeasance -in office as the intentional failure to perform a specific duty expressly- defined by the legislature:
In Passman, this court was unwilling to say that any willful dereliction of duty constituted an intentional refusal or failure to perform a duty lawfully required of the public officer by the- malfeasance statute. The court held that the defendant’s misconduct did not constitute the crime of malfeasance if no statute delineated the affirmative duty that defendant was charged with failing to perform. By adopting this narrow “express legislative requirement” approach, the court obviously rejected the idea that the Legislature intended to adopt |nan open-ended offense covering general derelictions of duty. The court also sought to avoid any constitutional problems of vagueness.
State v. Perez, 464- So.2d at 746 (Lemmon, Justice, dissenting) (footnote omitted). Consistent with this limiting definition, that the -duty be one expressly defined by the legislature, the court in State v. Perez, supra, found a “duty lawfully required,” in the duty not to interfere with the execution of the constitution and laws of this state, imposed upon public officials (and upon the defendant district attorney) by virtue of the oath of office set forth in La. Const, art. X, § 30. Perez, 464 So.2d at 742. Similarly, in State v. Schwehm, 98-1599 (La.3/19/99), 729 So.2d 548, the court upheld the malfeasance conviction of a former Justice of the Peace on evidence that he failed to remit littering fines that by statute, LSA-R.S. 25:1112(A), he was *457 required to remit to the governing authority of the parish. The court found that by failing to remit the fines and converting them to use for his own benefit and the benefit of his public office, the defendant had “intentionally refused to perform the duty placed upon him by law” to remit the fines to the parish governing authority. Schwehm, 98-1599 at 7, 729 So.2d at 551.
As demonstrated by the foregoing, in determining the meaning of the phrase “duty lawfully required” in the malfeasance statute, the focus of the courts has been on whether there is a statute or provision of law which imposes an affirmative, personal duty on the public officer or employee in his role as such which he has intentionally failed to perform or intentionally violated, i.e., performed in an unlawful manner....
10-0581, p. 7-9, 59 So.3d at 1250-52.
The Court in Petitto concluded that “[tjhere is nothing in the language of LSA-R.S. 14:134, or in the, jurisprudence interpreting the same, to suggest that the ‘duty lawfully required’ of a public official be ‘criminal in nature.’ ”' 10-0581, p. 11, 59 So.3d at 1252. The Court held that violations of the two provisions of the Code of Governmental Ethics, when committed with the requisite intent, may form the basis for a charge of malfeasance in office. Petitto, 10-0581, p. 12, 59 So.3d at 1253.
| iaThe State cites to La. Admin. Code tit. 67, pt. V, § 7515(C)(2), which states: Use of force by staff on detained youth, through either acts of self-defense or the use of force to protect a youth from harming himself/herself or others, shall be immediately reported in writing to the administrator of the facility. A copy of the written report shall be maintained in the youth’s filé.” (Emphasis added).
The State’s first .bill of particulars alleged, in pertinent part, that Mr. Ferguson “committed the crime of malfeasance in office by failing to report the battery....” However, unlike in Petitto, the State in the present case did not cite in either the indictment or either of its bills of particulars any statute, administrative provision, etc., setting forth an affirmative duty “lawfully required” of Mr. Ferguson vis-a-vis his alleged “failure to report” any battery (committed on C.P.). Therefore, the State’s citing of La. Admin. Code tit. 67, pt. V, § 7515(C)(2), which was not before the trial court, has no effect on our de novo review of whether the trial court erred as a matter of law in granting the Motion to Quash. Also, assuming arguendo that the State could cite this provision for the first time on appeal as a basis for this Court’s ruling - on the correctness of the trial court’s granting of Mr. Ferguson’s Motion to Quash, La. Admin. Code tit; 67, pt. V, § 7515(C)(2) does not require that any particular actor, e.g., the person who used the force, any person witnessing the use of the force, etc., report the use of force. The provision only requires that the use of force be reported. Thus, neither the indictment nor the bills of particular, read separately or together, nor la. admin, .code tit. 67, pt. V, § 7515(C)(2), sets forth any duty owed by Mr. Ferguson to report a use of force. The State cites no authority for the proposition that such an administrative rule can furnish the “any duty lawfully required of him” element of La. R.S. 14:134, the malfeasance in office statute.
1 iaThe State set forth in the second bill of particulars that the Defendants committed (1) a “battery” upon C.P. (who, or whose status, is not identified anywhere in the bill of particulars or the indictment); (2) obstruction of justice; (3) “accessory after the fact” (it was alleged in the first bill of particulars that Mr. Horton committed the battery and that Mr. Ferguson committed the crime of accessory after the *458 fact to simple battery); (4) and that Mr. Ferguson committed the offense of injuring public records.[6]
The State relied upon State v. Coker, 625 So.2d 190 (La.App. 3 Cir.1993). The police chief in Coker was indicted for malfeasance in office, second degree battery, and two counts of simple battery. 625 So.2d at 191. The battery charges were dropped prior to trial, and the defendant was tried and found guilty as charged of malfeasance in office. Coker, 625 So.2d at 192. On appeal, the defendant asserted that the evidence had been insufficient to convict him because the State failed to prove that he had violated “a duty lawfully required of him,” as per La. R.S. 14:134. Id. The defendant contended that he could not have been found guilty of malfeasance for battering the two prisoners absent a statute requiring that “law enforcement officials shall ensure the safety, health and well being of all citizens or person in their presence or custody, and ensure no batteries are committed upon the person who is in their custody or presence.” Coker, 625 So.2d at 195.
The Third Circuit rejected the defendant’s assertions, stating that to accept it would require that every conceivable function and duty of a public official be specifically included in a prohibitory statute in order to successfully “notify” the | uofficial of his potential for liability for malfeasance. Id. The court noted that only two offenses (at that time) were specifically delineated as constituting malfeasance, citing La. R.S. 14:134.1 and La. R.S. 14:134.2, and that in all other cases, the specific duties required to support convictions for malfeasance were derived from other sources. The court also cited cases in which specific criminal statutes had been used to support malfeasance convictions. id The court found that “Chief Coker was engaged in the performance of his official duty to detain and arrest suspected violators at the time of the incident, and that Chief Coker performed this duty in an unlawful manner by battering them.” Coker, 625 So.2d at 196.
While the defendant argued that the State had not set out in the indictment or in a bill of particulars any statutory provisions delineating any affirmative duties as the chief of police, the appellate court took judicial notice of specific statutory obligations cited by the State in support of its claim that the defendant had an affirmative duty to apprehend offenders, and was bound by statutory and constitutional mandates not to batter suspects in his custody. Id. The court also cited the trial court’s recognition that the defendant’s oath of office required that he support the constitution and laws of the United States and of the State of Louisiana, and that he discharge his duties in a faithful and impartial manner. Coker, 625 So.2d at 197. The court stated that:
In State v. Didier, 259 La. 967, 254 So.2d 262 (1971), a sheriff was charged with malfeasance for failing to halt the commission of crimes about which he had knowledge. The state did not allege a specific statutory mandate which required that the sheriff arrest the offenders. Justice Dixon, writing for the supreme court, noted, sua sponte, that “if a statute were needed,” R.S. 33:1435 articulates the duty of the sheriff to apprehend public offenders. By noting this statute, which was not presented by the state, and by the language used in his statement, Justice Dixon clearly 11fiimplied that it is unnecessary for the state to allege a specific statutory man *459 date setting forth the proposition that a law enforcement officer has the duty to apprehend offenders. Later, in State v. Perez, 464 So.2d 737 (La.1985), Justice Dixon again noted that, in some cases, certain duties are “inherent in the nature of the office.” Similarly, the state contends that La.R.S. 33:423 and the Code of Criminal Procedure articles cited establish Chief Coker’s duty to arrest offenders and provide standards of conduct to be followed when making arrests. The federal court for the Western District of Louisiana has also noted that “police officers have an affirmative duty to enforce the law.” Thomas v. Frederick, 766 F.Supp. 540 (W.D.La. 1991).
Coker, 625 So.2d at 196. The Coker court found that “Chief Coker’s reprehensible attack on these suspects constituted, a breach of his most fundamental duty — the duty to respect the rule of law and¡ to protect all citizens within his jurisdiction from violence against their persons.” Id. “The defendant had an express, affirmative duty to investigate criminal activities and to apprehend suspects.” Id. However, “[t]he defendant performed those duties in an unlawful manner by maliciously battering two suspects.” Id.
In State v. Perez, 450 So.2d 1324, 1325 (La.App. 4th Cir.1984), the Plaquemines Parish district attorney and a district court judge were jointly charged by bill of information with two counts of malfeasance in office relating to the allegedly illegal discharge of two grand juries. The district attorney was additionally charged in a separate count with malfeasance in office for instituting prosecution of a grand jury foreman. Id. The State alleged in its bill of particulars that the defendants violated specific constitutional provisions and statutes. Id. at 1326. The defendants filed a motion to quash that was denied by the trial court. This court granted writs and reversed, finding that .neither defendant violated any statutory duty required of him by law. Id.
lifThe Louisiana Supreme Court in Perez subsequently reversed in part and affirmed in part, finding that this Court:
essentially held on the basis of the evidence produced on the motion to quash that the defendants were not guilty of malfeasance in discharging the grand jury because the evidence .showed that the defendants did not misrepresent the facts and that due to outside influences upon the grand jury, there was legal cause for its discharge. While there may be merit to these holdings if the matter were before the court on a motion for a directed verdict or acquittal, the foregoing factual conclusions afford no legal basis to quash a bill of information.
State v. Perez, 464 So.2d 737, 739 (La. 1985).
Further, this Court, in'a case factually similar to Coker, in State v. Deville, 94-0241, p. 2 (La.App. 4 Cir. 10/27/94), 644 So.2d 1117, 1119, the defendant was the chief of police of Washington, Louisiana. He was indicted by the St. Landry Parish grand jury on four counts of malfeasance in office relating to criminal acts committed against four individuals: (1) perjury relative to a traffic charge as to one individual; (2) battery upon a handcuffed ar-restee; (3) falsely imprisoning and committing a battery upon another arrestee; (4) and committing a battery upon the mother of the aforementioned arrestee whom he falsely imprisoned and battered.' Deville, 94-0241, pp. 2-3, 644 So.2d at 1119. The indictment set forth in each count that the defendant, the “duly sworn” chief of police, committed malfeasance in office “by intentionally failing to perform the duties lawfully required of him as said *460 officer and intentionally performed said duties in an unlawful manner.” Deville, 94-0241, pp. 4-5, 644 So.2d at 1120. All four counts in the indictment further set forth that as the chief of police the defendant was sworn to support the constitutions and laws of the United States and Louisiana, followed by recitations of the specific respective acts he committed as to each victim. Id.
|17Prior to trial, the defendant in Deville filed a motion to quash, urging that his oath of office did not satisfy the jurisprudential requirement of the introduction of a statute or provision of law delineating an affirmative duty that was expressly imposed by law on him as the chief of police. Deville, 94-0241, p. 3, 644 So.2d at 1119. The motion was denied; defendant proceeded to trial; and he whs found guilty as charged on all counts. Deville, 94-0241, p. 1, 644 So.2d at 1118.
On appeal, the defendant questioned the sufficiency of the evidence to sustain his convictions, employing the same argument he had raised in his motion to quash. Deville, 94-0241, p. 3, 644 So.2d at 1119. He also contended .that the specific criminal statutes he violated did not impose the affirmative. duty the malfeasance statute required. Id. In Deville, this Court quoted extensively from Coker and adopted its language as the legal basis for concluding that:
[T]he bill of information which included reference to defendant’s oath of office properly charged the offense of malfeasance in office. In addition we note the elementary fact that certain affirmatiye duties are inherent in the nature of the office. Certainly police officers have the duty, not break the law when performing the duties of their office. Our review of the evidence convinces us that it is sufficient to sustain the jury’s conclusion that defendant is guilty of malfeasance.
94-0241, p. 8, 644 So.2d at 1123.
In the present case, the State’s indictment and bills of particulars fail to set forth basic facts. For example, that the defendants were both correctional officers at a juvenile correctional facility and that C.P., whom they allegedly, as listed in the second bill of particulars, committed a battery upon, was an inmate of that correctional facility.- However, these facts are not in dispute. The first bill of particulars characterized the battery as a criminal simple battery. While it is acknowledged that the first bill of particulars stated that Mr. Ferguson was an 11saccessory after the fact to a simple battery committed by Mr. Horton/[7] the second bill of particulars alleges that the Defendants’ committed a battery on C.P. Further, thé State represented that it was alleging that Mr. Ferguson was a principal to the simple battery committed by Mr. Horton. The bills of particulars implicitly provided that the simple battery allegedly committed by the Defendants was committed without legal justification — that it was not committed as a necessary application of force in the performance of the Defendants’ duties as correctional officers or was otherwise justified. See La. R.S.-14:19 (the defense of justification).
In Deville, this Court stated: “[W]e note the elementary fact that certain affirmative duties are inherent in the nature of the office. Certainly, police officers have the duty not to break the law when performing the duties of their office.” 94-0241, p. 8, 644 So.2d at 1123. Thus, this .Court found an inherent affirmative duty im *461 posed on the defendant not to break the law when performing the duties required of a police officer. ■
Likewise, a correctional officer in a juvenile correctional facility has a duty inherent in the nature of that office not to break the law when performing the duties required of that office. Becoming a principal to the commission of a simple battery upon a juvenile inmate in his care and custody would therefore break the law and be vio-lative of the duties of a correctional officer in a juvenile facility.- Thus, the bill of information and bills of particulars in the present case adequately informed Mr. Ferguson of what affirmative duty he was charged with violating.. For the 11 aforegoing reasons, we find that Mr.- Ferguson was lawfully and adequately informed as to charges brought against him and the duties he allegedly violated. Therefore, we reverse the trial court’s ruling. granting Mr. Ferguson’s Motion to Quash, and remand for further proceedings consistent with this opinion.
MR. HORTON’S WRIT APPLICATION: NO. 2014-K-1321
Mr. Horton, in his writ application, 2014-K-1321, contends that the trial court erred in denying his Motion to Quash. As Mr. Horton’s assertions are the converse of the State’s argument, addressed herein-above, having' found that „the trial court erroneously granted Mr. Ferguson’s Motion to Quash, and consistent with the above reasoning, we find that the trial court did not err in denying Mr. Horton’s Motion to Quash. Accordingly, the writ is denied.

STATE’S WRIT APPLICATION-NO. 2014-K-1334

The State avers, in writ application 2014-K-1334, that the trial court erred in granting’Mr. Horton’s Motion to Sever the Defendants. - .
 La. C.Cr.P. art. 704 states that: Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the- district attorney, is satisfied that justice requires a severance.
Whether justice requires a severance must be determined, by the facts of each case. State v. Nora, 13-0892, p. 10 (La.App. 4 Cir. 6/18/14), 143 So.3d 1237, 1245, quoting State v. Everett, 11-0714, p. 33 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 629. A defendant is not entitled to a severance as a matter of right;. the decision is one resting within, the sound discretion of the trial court. Id. A trial court’s .denial of a motion to sever will not be disturbed absent a clear abuse of discretion. Everett, 11-0714, p. 33, 96 So.3d at 629.
IsnMr. Horton’s Motion to Sever. was based on the “antagonistic defense” theory, and he also raised as a ground a “potential” right to confrontation issue under Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), relative to oral and/or written statements made by Mr. Ferguson.
“A severance is necessary if the 'defenses of the co-defendants are mutually’ antagonistic to the extent that -one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the state.” State v. Krodinger, 12-0134, p. 12 (La.App. 4 Cir. 2/27/13), 128 So.3d 270, 278. However, “justice -does not require a severance” “[w]here the thrust of the co-defendant’s testimony is simply to deny his own involvement and not implicate the other defendant ...; this rule applies even *462 though the co-defendant’s testimony may, by inference, be damaging to the other defendant.” Id. “The standard for a pretrial severance is broader because of speculation as to what the evidence will be, whereas the standard for severance after trial commences is stricter because the judge can examine the evidence.” State v. Taylor, p. 10 (La.App. 4 Cir. 9/4/09), 21 So.3d 421, 426-27, quoting State v. August, 96-2777, pp. 8-9 (La.App. 4 Cir. 9/16/98), 719 So.2d 536, 541.
Counsel for Mr. Horton represented that the State was alleging that Mr. Ferguson had given oral statements; that the defense did not know the content of those statements; but that if they were going to be used against Mr. Horton, there would be a Bruton issue. Counsel represented at that hearing that she had requested that the State reduce Mr. Ferguson’s oral statement(s) to writing, but the State had not done so. Mr. Horton’s counsel conceded that she did not know the content of the oral statement(s). She also admitted she received a copy of Mr. Ferguson’s written statement from the State.
121 In the first bill of particulars the State provided, as to Mr. Ferguson’s statements:
7. Yes, the State intends to use the written statement given by Defendant Ferguson that was previously turned over to defense counsel in discovery. The State also intends to use oral, unrecorded statements made by Defendant Ferguson to [YSC Superintendent] Glen Holt on August 5, 2012.
Mr. Horton’s counsel also asserted, as to the antagonistic defenses issue, that the State had offered Mr. Ferguson a deal wherein he was supposed to testify against Mr. Horton. Thus, she argued, Mr. Ferguson was prepared to testify against her client.
The State contended that the same offer made to Mr. Ferguson had been offered to Mr. Horton. The prosecutor asserted that there was no deal made with either defendant, and if and when there was, the State would honor its Brady obligations[8] and ensure that information was turned over. The State made no specific reference to the content of any statement made by Mr. Ferguson.
The trial court gave no reasons for granting Mr. Horton’s Motion to Sever. Mr. Ferguson’s written statement is not included in the State’s writ application or the record in the State’s appeal. In Mr. Horton’s Motion to Sever, he asserted that it was his “belief’ that Mr. Ferguson’s defense would be that Mr. Horton committed the battery and he, Mr. Ferguson, just happened to be there.
In arguing that Mr. Ferguson was a principal to the battery, the State detailed evidence that was not presented at the probable cause hearing, referring to a YSC video of the incident. The following representation was made by the State as to the content of the video when it argued against Mr. Ferguson’s Motion to Quash:
__l2g[W]hat is clear on the video is that [Mr. Ferguson] partakes in the incident by allowing it to happen. He stands aside, he walks up, looks into the room and watches it happen and walks away. He does nothing to help, he doesn’t maintain his affirmative duty to lawfully detain this person, but he allows this simple battery to occur;....
There was no indication in the record that the trial court had the benefit of the content of Mr. Ferguson’s oral statement when it granted Mr. Horton’s Motion to Sever. Thus, the content of that oral statement could not have factored into the *463 trial court’s granting of Mr. Horton’s Motion to Sever.
La. C.Cr.P. art. 704 provides that jointly indicted defendants “shall be tried jointly unless ... [t]he court ... is satisfied that justice requires a severance.” Considering the content of the State’s writ application contesting the trial court’s granting of Mr. Horton’s Motion to Sever, as well as the content of the appellate record in the State’s consolidated appeal as to the trial court’s granting of Mr. Ferguson’s Motion to Quash, we do not find a basis for a finding by the trial court that “justice” required a severance of the Defendants.
In the present case, CO Waker’s report indicates little culpability on the part of Mr. Ferguson. The State represented to the trial court that it is alleging that Mr. Ferguson was a principal to the battery committed by Mr. Horton. Thus, there would be no need for Mr. Ferguson to accuse Mr. Horton of the battery. The State represented that a video shows that Mr. Ferguson “stands aside, he walks up, looks into the room and watches it happen and walks away.” Defending against these factual allegations by Mr. Ferguson would not require him to implicate Mr. Horton. The other crimes allegedly committed by Mr. Ferguson were obstruction of justice, accessory after the fact, and injuring public records, which Mr. Ferguson could not defend against by blaming Mr. Horton.
| gaGiven that Mr. Ferguson is not accused of committing the act of battery upon C.P., his culpability rests solely upon his acts or failure to act. Mr. Ferguson would derive no benefit from attempting to implicate Mr. Horton. Mr. Horton’s entire argument as to the antagonistic defense ground for severance was that Mr. Ferguson’s defense “will rest upon the theory that Mr. Horton was the one who allegedly violated this code and that he just happen [sic] to be there.”
The facts and circumstances evidenced by the record do not support a finding of antagonistic defenses. Therefore, we find that the trial court abused its discretion in granting Mr. Horton’s Motion for Severance based on the ground of antagonistic defenses.
Further, the United States Supreme Court held that “a defendant is deprived of his rights under the Confrontation Clause when his nontestifying code-fendant’s confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant.” Richardson v. Marsh, 481 U.S. 200, 201-02, 107 S.Ct. 1702, 1704, 95 L.Ed.2d 176 (1987), citing Bruton. The Louisiana Supreme Court set forth the Bruton concerns in State v. Hunter, 11-0291, p. 2 (La.4/8/11), 59 So.3d 1258, 1259, as follows:
To the extent that the co-defendant’s testimonial statement constitutes a “powerfully incriminating extrajudicial statement” which directly implicates defendant in the crimes charged, Bruton v. United States, 391 U.S. 123, 135, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476 (1968), the statement may not be admitted at a joint trial, even under a limiting instruction that jurors are to consider it as evidence only against the co-defendant, id., 391 U.S. at 137, 88 S.Ct. at 1628, and even if defendant’s own statement to the police partially interlocks with the co-defendant’s statement, Cruz v. New York, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), unless the prosecution redacts the co-defendant’s statement in such 124a way that it no longer facially or directly implicates defendant in the crime. Gray v. Maryland, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d *464 294 (1998). If the prosecutor is unable to redact the co-defendant’s statement in such a fashion, yet intends to use that statement against the, co-defendant at trial, the defendants must be severed. See State v. Johnson, 96-0959 (La.6/28/96), 675 So.2d 1098.
In Richardson, the Court considered “whether Bruton requires the same result when the codefendant’s confession is redacted to omit any reference to the defendant, but the defendant is nonetheless linked to the.confession by evidence properly admitted against him at trial.” Richardson, 481 U.S. at 202, 107 S.Ct. at. 1704. The Court held that this redacted confession fell outside Bruton’s scope and was admissible (with'an appropriate' limiting instruction) at the joint trial. Richardson, 481 U.S. at 211, 107 S.Ct. at 1709. The Court said:
In Bruton, the codefendant’s confession “expressly implicat[ed]” the defendant as his accomplice. Thus, at the time that confession was introduced there was not the slightest doubt that it would prove “powerfully incriminating.” By contrast, in this case the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial (the defendant’s own testimony).
Richardson, 481 U.S. at 208, 107 S.Ct. at 1707.
The State relies upon on Mr. Horton’s use of the adjective “potential” when referring to the Bruton issue, asserting that this evidences that Mr. Horton does not even know the content of the statements made by Mr. Ferguson. 1 Thus, the State contends, his Bruton claim is devoid of any evidence that Mr. Ferguson made any statements or gave a confession that “expressly implicated” him, as did the confession at issue in Bruton.
We agree. As discussed herein, counsel for Mr. Horton cited nothing from Mr. Ferguson’s written statement relative to him expressly implicating Mr. |2i;Horton— and that written statement is not a part of the record. Counsel for Mr. Horton admitted she did not know the content of the oral statement given by Mr. Ferguson to Superintendent Holt.
Nothing contained in the record furnishes a basis' to conclude that either Mr: Ferguson’s oral or written statement constitutes a “ ‘powerfully incriminating extrajudicial statement’ which directly implicates defendant in the crimes charged.” Richardson, 481 U.S. at 208, 107 S.Ct. at 1707. Further, Mr. Horton failed to cite any authority for the proposition that Bru-ton or its progeny requires a severance for a “potential” Bruton violation. Therefore, we find that the trial court abused its discretion in granting Mr. Horton’s Motion to Sever based on the alleged “potential” Bruton issue. Accordingly, we grant the State’s writ, reverse the severance, and remand for further proceedings consistent with this opinion.

DECREE

For the foregoing reasons, we find that the trial court erred in granting Mr. Ferguson’s Motion to Quash, and remand for further proceedings consistent with this opinion. Further, we deny Mr. Horton’s writ because the tidal court did not err in denying his Motion to Quash. Lastly, we find that the trial court abused its discretion in granting Mr. Horton’s Motion to Sever because there is no evidence of antagonistic defenses or Bruton issues. Thus, we grant the writ, reverse the trial court, and remand for further' proceedings consistent with this opinion.
REVERSED AND REMANDED; WRIT DENIED; WRIT GRANTED AND REMANDED.
McKAY, C. J., dissents in part.

. Mr. Horton’s arrest register reflects that he was arrested in connection with the incident and booked with aggravated battery. Mr. Ferguson was not arrested at that time. The case was screened by the District Attorney’s Office, and the charge of malfeasance in office was accepted on that date as to both Mr. Horton and Mr. Ferguson. A bill of information was filed that same day charging both accordingly.

. The juvenile’s name is abbreviated to protect his privacy. See State in Interest of D.V., 13-1283 (La.App. 4 Cir. 5/7/14), 144 So.3d 1097 and Rules 5-1 and 5-2 of the Uniform Rules — Courts of Appeal.

. R.S. 14:134: Malfeasance in Office provides:
A. Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner; or
(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
B. Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall not relieve the public officer or employee'of his lawful duty.
C.(1) Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars, or both.
(2) In addition to the penalty provided for in Paragraph (1) of this Subsection, a person convicted of the provisions of this Section may be ordered to pay restitution to the state if the state suffered a loss as a result of the offense. Restitution shall include the payment of legal interest at the rate provided in R.S. 13:4202.

. The second motion to quash was based on the State's failure to modify/amend the bill of particulars after ordered to by the trial court. However, the State later complied.

. La. Ch.C. art. 306(A) states:
A. Prior to the divesting events specified in Paragraphs A through D of Article 305, the child shall be held in custody in a juvenile detention center, except as hereinafter provided.

. As previously noted, the State represented that it was charging Mr. Ferguson with battery as a principal, asserting that Mr. Horton actually committed the battery.

. One can only be an accessory after the fact to the commission of a felony, and simple battery is a misdemeanor. La. R.S. 14:25 ("An accessory after the fact is any person who, after the commission of a felony..

. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).